**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOCKETED

JUL 0 8 2003

JUDGE MORAN

| | |
|---|---|
| WAFRA CAPITAL PARTNERS, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PRIME LEASING, INC. | ) |
| and WILLIAM A. BRANDT, JR., as Assignee, | ) |
| | ) |
| Defendants. | ) |

Case No. 03C 4687

Jury Trial Demanded

**MAGISTRATE JUDGE NOLAN**

FILED-E05
03 JUL 07 PH 4:03
CLERK
U.S. DISTRICT COURT

## COMPLAINT

Now comes plaintiff, Wafra Capital Partners, L.P., by its attorneys, Fox Horan &

Camerini LLP and Leon Zelechowski, and brings this action against the above named

Defendants, for breach of contract and other claims, and as grounds for relief it alleges as

follows:

## PARTIES

1. At all times relevant to this Complaint, Plaintiff was a Cayman Islands

corporation with its principal office at Huntlaw Building, P.O. Box 1350, Fort Street,

Grand Cayman, Cayman Islands. Plaintiff is the Fund Manager of Wafra Diversified

Higher Yield Leasing Fund I Ltd., a Cayman Islands corporation, a subsidiary of which,

Wafra Leasing Corporation 1999-A-1, acquired as of March 1, 1999 certain equipment

from affiliates of Prime pursuant to a certain Installment Purchase Agreement, dated as of

March 1, 1999, among Defendant Prime Leasing, Inc., Prime Finance Corporation 1999-

A-1, Prime Finance Corporation 1999-A-2 and Wafra Leasing Corporation 1999-A-1 (the

1/1

"Purchase Agreement), subject to a certain Master Equipment Lease Agreement, dated as

of March 1, 1999, by and between Prime Equipment Corporation 1999-A, Prime Finance

Corporation 1999-A-1 and Prime Finance Corporation 1999-A-2 (collectively, the

"Transaction").

      2.     At all times relevant to this Complaint, Defendant Prime Leasing, Inc.

("Prime") was an Illinois corporation with its principal office at 10275 West Higgins

Road, Rosemont, Illinois 60018. Prime Leasing is a wholly owned subsidiary of Prime

Capital Corporation, a Delaware corporation.

      3.     At all times relevant to this Complaint, Defendant William A. Brandt, Jr.

("Brandt") was, on information and belief, a resident of the State of Illinois and an officer

of Development Specialists, Inc. ("DSI"), an Illinois corporation, with its principal office

at 70 West Madison Street, Chicago Illinois 60618. DSI is a management consulting

services company, specializing in the area of reorganization, bankruptcy, turnaround

management and business workouts.

      4.     On July 14, 2000, Defendants Prime and Brandt entered into a certain

Trust Agreement and Assignment for the Benefit of Creditors of Prime Leasing, Inc. (the

"Trust Agreement"). Pursuant to the Trust Agreement, Prime stipulated that it is

"indebted to various persons, corporations and other entities and is unable to pay its debts

in full, and has decided to discontinue its business and is desirous of transferring its

property to an Assignee for the benefit of its creditors so that the property so transferred

may be expeditiously liquidated and the proceeds thereof be fairly distributed to its

creditors." The Trust Agreement nominated and appointed Defendant Brandt as Trustee-

Assignee to carry out the purpose of the trust. Pursuant to the Trust Agreement, Prime

granted, conveyed, assigned, transferred and set over to Brandt, as Trustee-Assignee, all

of Prime's property and assets. The Trust Agreement gave Brandt the powers and duties,

among others, to settle any and all claims against or in favor of Prime, with full power to

compromise, or in his discretion, to sue or be sued, and to prosecute or defend any claims

of any nature against or in favor of Prime.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332

by reason of the diversity of citizenship between Plaintiff and all Defendants. The

amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) and (b).

On information and belief, both Defendants reside in the Northern District of Illinois, and

the bulk of the actions and omissions giving rise to Plaintiff's claims took place in the

Northern District of Illinois.

## COUNT I
## (Against Prime For Breach of Contract)

7.      On March 1, 1999, Plaintiff and Defendant Prime entered into an

Agreement (the "Placement Fee Agreement"). The Placement Fee Agreement provided

that in connection with the Transaction and as consideration for Plaintiff and its affiliates

entering into the Transaction, Defendant Prime agreed to pay certain definitive sums to

Plaintiff, as set forth in the Placement Fee Agreement. A copy of the Placement Fee

Agreement is attached hereto as Exhibit "A."

3

8.    Pursuant to Section 1 of the Placement Fee Agreement, Prime was obligated to pay to Plaintiff the amount of $173,000 by May 1, 2000. Section 3 of the Placement Fee Agreement provides that if this amount is not paid by May 1, 2000, it shall bear interest at a rate of two percent (2%) over the prime rate as published in *The Wall Street Journal* as of the date the payment is due. The prime rate, as published in *The Wall Street Journal* on May 1, 2000, was nine percent (9%). The amount of $173,000 due under such Section 3 was never paid by Prime. Accordingly, there is now due and owing from Prime the amount of $173,000 plus interest from May 1, 2000 at a rate of eleven percent (11%) per annum.

9.    Section 2 of Placement Fee Agreement provides for an additional two percent (2%) return payable by Prime to Plaintiff on the original principal invested by Wafra Leasing Corporation 1999-A-1 under the Purchase Agreement, which principal was $5,550,497.

10.    Under Section 4.d of the Placement Fee Agreement, the July 14, 2000 assignment of Prime's assets to Brandt described in paragraph 4 above constituted an event of default, which automatically accelerated the entire amount payable under the Placement Fee Agreement. The amount due and payable under the Section 2 of the Placement Fee Agreement as of July 14, 2000 is $378,050. Thereafter, interest thereon accrued at a rate of $11.5% per annum.

11.    Prime has never paid to Plaintiff any portion of the amount it owes under Section 2 of the Placement Fee Agreement.

12.     Accordingly, there is now due and owing from Prime to Plaintiff (1) the amount of $173,000, plus interest at a rate of 11% per annum from May 1, 2000, and (2) the amount of $378,050, plus interest at a rate of 11.5% per annum from July 14, 2000.

13.     By failing to pay any of the amounts it is obligated to pay under the Placement Fee Agreement, Prime has breached the Placement Fee Agreement.

14.     Section 11 of the Placement Fee Agreement provides that in the event either party must act to enforce any of the terms, conditions or covenants of the Placement Fee Agreement, the non-prevailing party shall pay to the prevailing party any and all costs, expenses and reasonable attorneys' fees incurred by the prevailing party.

15.     For the foregoing reasons, Plaintiff is entitled to judgment against Defendant Prime (1) in the amount of $173,000, plus interest at a rate of 11% per annum from May 1, 2000 through the date of the judgment, and (2) the amount of $378,050, plus interest at a rate of 11.5% per annum from July 14, 2000 through the date of the judgment, and (3) all costs, expenses and reasonable attorneys' fees incurred by Plaintiff in connection with the enforcement of its rights under the Placement Fee Agreement.

WHEREFORE, Plaintiff, Wafra Capital Partners, L.P., prays for judgment against Defendant, Prime Leasing, Inc., (1) in the amount of $173,000, plus interest at a rate of 11% per annum from May 1, 2000 through the date of the judgment and (2) the amount of $378,050, plus interest at a rate of 11.5% per annum from July 14, 2000 through the date of the judgment, and (3) all costs, expenses and reasonable attorneys' fees and costs of action.

5

## COUNT II
### (Against Brandt as Prime's Assignee)

1-15.   Plaintiff pleads and realleges paragraphs 1 through 15 of Count I as and for its paragraphs 1 through 15 of Count II.

16.    Section 14 of the Placement Fee Agreement provides that the Placement Fee Agreement "shall be binding upon Prime and [Plaintiff] and their respective successors and assigns."

17.    Pursuant to the Trust Agreement, Brandt became the assignee of Prime, and, as such, stands in the shoes of Prime.

18.    The provisions of the Placement Fee Agreement are, by their terms, and in accordance with the applicable law governing assignments for the benefit of creditors, binding on Brandt.

19.    Plaintiff may pursue its claims under the Placement Fee Agreement against Brandt, as Prime's assignee.

20.    Brandt has admitted to Plaintiff the validity of Plaintiff's claims under the Placement Fee Agreement.

21.    Accordingly, Plaintiff is entitled to judgment against Defendant Brandt, as Prime's assignee (1) in the amount of $173,000, plus interest at a rate of 11% per annum from May 1, 2000 through the date of the judgment and (2) the amount of $378,050, plus interest at a rate of 11.5% per annum from July 14, 2000 through the date of the judgment, and (3) all costs, expenses and reasonable attorneys' fees incurred by Plaintiff in connection with the enforcement of its rights under the Placement Fee Agreement.

WHEREFORE, Plaintiff, Wafra Capital Partners, L.P., prays for judgment against Defendant, Prime Leasing, Inc., (1) in the amount of $173,000, plus interest at a rate of 11% per annum from May 1, 2000 through the date of the judgment, and (2) the amount of $378,050, plus interest at a rate of 11.5% per annum from July 14, 2000 through the date of the judgment, and (3) all costs, expenses and reasonable attorneys' fees and costs of action.

WAFRA CAPITAL PARTNERS, L.P.

By: _____
One of its Attorneys

Leon Zelechowski, Esq.
LEON ZELECHOWSKI, LTD.
111 W. Washington St.
Suite 1437
Chicago, Illinois 60602
(312) 609-0022
ARDC NO. 03106039

Oleg Rivkin, Esq.
Eric Lindquist, Esq.
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, New York 10022
(212) 480-4800

## AGREEMENT

This Agreement is dated as of March 1, 1999 between Prime Leasing, Inc. an Illinois corporation ("Prime") and Wafra Capital Partners, L.P., a Cayman Islands limited partnership ("Wafra").

### WITNESSETH:

WHEREAS, Wafra is the Fund Manager of Wafra Diversified Higher Yield Leasing Fund I Ltd., a Cayman Island corporation, a subsidiary of which Wafra Leasing Corporation 1999-A-1, is acquiring as of March 1, 1999 certain equipment from affiliates of Prime pursuant to that certain Installment Purchase Agreement, dated as of March 1, 1999, among Prime Leasing, Inc., Prime Finance Corporation 1999-A-1, Prime Finance Corporation 1999-A-2 and Wafra Leasing Corporation 1999-A-1 (the "Purchase Agreement"), subject to that certain Master Equipment Lease Agreement, dated as of March 1, 1999, by and between Prime Equipment Corporation 1999-A, Prime Finance Corporation 1999-A-1 and Prime Finance Corporation 1999-A-2 (collectively, the "Transaction").

WHEREAS, in connection with the Transaction and as consideration for Wafra and its affiliates to enter into the Transaction, Prime has agreed to pay certain definitive sums to Wafra, as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows (capitalized terms used herein and not otherwise defined shall have the meanings as specified in Appendix A to the Purchase Agreement):

1.      On or before May 1, 2000, Prime shall pay to Wafra, in immediately available funds, $173,000, as a placement fee on the Owner Certificate.

2.      a.      Subject to the provisions of this paragraph 2, after the date of the last installment payment under the Owner Certificate being issued in connection with the Transaction, or May 1, 2004, at the election of Wafra (the "Payment Trigger Date"), Prime shall pay to Wafra, in immediately available funds, an amount equal to a two percent (2%) rate of return on $ _5,550,497_ (as amortized pursuant to Prime Finance Corporation, Series 1999-A, Owner Certificate Transaction). The foregoing notwithstanding, the amount to be paid under this paragraph 2 shall not exceed the aggregate earnings of Prime Capital Corporation, a Delaware corporation and its subsidiaries (the "Aggregate Earnings") for the period from May 1, 1999 through the Payment Trigger Date (the "Earnings Period"); provided, however, that the Aggregate Earnings limitation of this sentence shall be deemed to be satisfied, and shall in no way limit the payments due hereunder, if any Event of Default or Other Event of

Exhibit "A"

Acceleration (as hereinafter defined) shall occur regardless of whether Wafra elects to accelerate payment hereunder pursuant to paragraph 5a.

b.   In determining the Aggregate Earnings for purposes of calculating the amount to be paid under this paragraph 2, the same accounting classifications, principles and practices shall be used as are currently being used by Prime and its subsidiaries in the preparation of its consolidated audited financial statements notwithstanding other classifications, principles or practices which may exist for such purposes and notwithstanding any changes which may be suggested or required now or in the future by generally accepted accounting principles.

c.   Within ten (10) business days following the end of the Earnings Period, Prime shall issue and deliver a report (the "Earnings Report") to Wafra, setting forth the Aggregate Earnings for the Earnings Period, in accordance with the provisions of this paragraph 2. If Wafra agrees with the Earnings Report, it may deliver written notice to Prime of its acceptance and the Earnings Report shall be deemed final upon Prime's receipt of said notice. Unless Wafra objects in writing to the Earnings Report within ten (10) business days from the receipt thereof (which objection shall set forth in reasonable detail the basis for such objection), the Earnings Report shall be deemed conclusive and final.

d.   If Wafra timely submits an objection to the Earnings Report, Prime and Wafra shall discuss said objections and within a period of ten (10) days following receipt of said objection attempt to resolve amicably their differences and cause the Earnings Report to become final. If they are unable to resolve their differences within such ten (10) day period then either party may thereafter initiate a process of binding arbitration by requesting the other party to agree to the selection of a firm of public accountants independent from either Prime or Wafra to whom the Earnings Report dispute may be submitted for resolution. If the Parties are unable to agree on the accounting firm to whom the dispute shall be submitted within 10 (ten) days following a request that the dispute be submitted to arbitration, then Prime shall designate such accounting firm from the so called "Big Six" firms; provided, however, that such firm is independent from Prime and Wafra and their respective affiliates. The designated accounting firm shall set the rules and procedures under which the dispute shall be heard and decided. The decision of the designated accounting firm shall be final and binding on the parties and enforceable in a court of law. If the dispute is settled during the arbitration process then the costs of such arbitration shall be shared equally. If the arbitrator actually makes an award then the costs of the arbitration shall be awarded pursuant to the discretion of the arbitrator. Each party shall bear the costs of their counsel and other advisors in such arbitration.

2

e.    The payment by Prime pursuant to this paragraph 2 shall be made within five (5) business days of the Earning Report becoming final.

3.    Any overdue payment pursuant to paragraph 1 or 2 shall bear interest at a rate of two percent (2%) over the prime rate as published in The Wall Street Journal (as of the date said payment is due) per annum from the date due until paid.

4.    Any one or more of the following shall constitute an "Event of Default" as such term is used herein:

a.    Default shall occur in the payments described in paragraph 1 or 2 above and such default shall continue for more than five (5) business days; or

b.    Default shall occur in the observance or performance of any covenant contained in this Agreement and is not remedied within five (5) business days after the day on which written notice thereof is given to Prime by Wafra; or

c.    A custodian, liquidator, trustee or receiver is appointed for Prime or for a major part of its property and is not discharged within 60 days after such appointment; or

d.    Prime becomes insolvent or bankrupt, is generally not paying its debts as they become due or makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a custodian, liquidator, trustee or receiver for Prime or for a major part of its property; or

e.    Bankruptcy, reorganization, arrangement or insolvency proceedings, or other proceedings for relief under any bankruptcy or similar law or laws for the relief of debtors, are instituted by or against Prime and, if instituted against Prime, are consented to or are not dismissed within 60 days after such institution.

5.    a.    When any Event of Default described in Paragraph a, b or c of paragraph 4 has occurred and is continuing, or when any Other Event of Acceleration as described in paragraph 7 shall occur, Wafra may by notice in writing to Prime declare the entire amount payable pursuant to this Agreement and all accrued interest to be due and payable. When any Event of Default described in paragraph d or e of paragraph 4 has occurred, then the entire amount payable pursuant to this Agreement shall immediately become due and payable without presentment, demand or notice of any kind. Upon the amounts described herein becoming due and payable as a result of any Event of Default as aforesaid, Prime shall

3

forthwith pay to Wafra the entire amount payable pursuant to this Agreement and all accrued interest, if any.

b.    Following any Event of Default, any amounts becoming immediately due and payable pursuant to paragraph 2 of this Agreement shall be subject to adjustment upon the Earnings Report becoming final.

6.    The provisions of paragraph 5 are subject to the condition that if the amounts payable pursuant to this Agreement and all accrued interest shall have been declared immediately due and payable by reason of the occurrence of any Event of Default, Wafra may by written notice deliver to Prime, rescind and annul such declaration and the consequences thereof, if all overdue payments and any interest thereon shall have been duly paid. No such rescission and annulment shall affect any subsequent default or Event of Default or impair any right consequent thereto.

7.    Any one or more of the following shall constitute an "Other Event of Acceleration":

a.    any merger, consolidation or other combination in which Prime is not the surviving entity or in which the assets of Prime do not constitute at least 60% by value of the assets of the continuing entity; or

b.    any distribution shall be made to shareholders unless there have been six consecutive quarters of profits immediately preceding the distribution.

8.    This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to its rules regarding conflict of laws.

9.    This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements between them, whether oral or written, of any nature whatsoever with respect to the subject matter hereof.

10.    Prime and Wafra each agrees to do such further acts and things and to execute and deliver such additional agreements and instruments as are reasonably required to carry into effect the purposes of this Agreement.

11.    In the event that either party must act to enforce any of the terms, conditions or covenants of this Agreement, the non-prevailing party shall pay to the prevailing party any and all costs, expenses and reasonable attorneys' fees incurred by the prevailing party

12.    This Agreement and the rights and obligations of the parties hereunder may not be changed orally but only by an instrument in writing signed by the party against which enforcement is sought.

4

13.  Any notice required or permitted herein shall be in writing and shall be deemed to have been properly given if delivered personally, or if sent by facsimile (with a copy mailed by overnight air mail), or if sent by courier service, or if sent by registered mail, return receipt requested, properly addressed to the party to be notified at the address or facsimile number set forth below or to the last known address or facsimile number given by such party to the other parties:

|  |  |
|---|---|
| If to Prime: | Prime Capital Corporation<br>10275 W. Higgins Road<br>Rosemont, IL 60018<br>Attn: Vern Landeck<br>Facsimile No. 847-294-6070 |
| With a Copy to: | Bischoff & Swabowski, Ltd.<br>311 S. Wacker Drive, Suite 2600<br>Chicago, IL 60606<br>Attn: Mark P. Bischoff<br>Facsimile No. 312-427-1027 |
| If to Wafra: | Wafra Capital Partners, L.P.<br>c/o Wafra Investment Advisory Group, Inc.<br>345 Park Avenue<br>New York, New York 10158-0101<br>Attn: Vincent Campagne<br>Facsimile No. 212-813-9488 |
| With a Copy to: | Hughes Hubbard & Reed, LLP<br>One Battery Park Plaza<br>New York, New York 10004-1482<br>Attn: Robert Toan<br>Facsimile No. 212-422-4726 |

Date of service of a notice delivered personally shall be the actual date of such delivery. Date of service of facsimile notice shall be the business day after sending. Date of service of a notice sent by courier service shall be the actual date of delivery. Date of service of a notice served by mail shall be the fourth (4th) day following the date the notice was deposited in the mails.

14.  This Agreement shall be binding upon Prime and Wafra and their respective successors and assigns. The rights and obligations of Prime shall not be assigned without the prior written consent of Wafra, which consent will not be unreasonably withheld.

15.  In case any one or more of the provisions contained in this Agreement should be or become invalid, illegal or unenforceable in any respect, the validity, legality

and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

16.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

[Signature Page To Follow]

6

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date and year first above written.

PRIME LEASING, INC.

By: _____
Name: VERN E. LANDECK
Title: VP-CFO

WAFRA CAPITAL PARTNERS, L.P.

By: Wafra Fund Management Ltd.
Its: General Partner
    By: _____
    Name: Anthony G Barbuto
    Title: VP

7

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

DOCKETED

JUL 0 8 2003

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff**(s): **Wafra Capital Partners, L.P** | **Defendant**(s): **Prime Leasing, Inc. William A. Brandt, Jr., as Assignee** |
| County of Residence: | County of Residence: Cook County, Illinois |
| Plaintiff's Atty: Leon Zelechowski, Ltd 111 W. Washington, Suite 1437 Chicago Illinois 60602 (312)609-0022 | Defendant's Atty: |

**JUDGE MORAN**

**03C 4687**

**MAGISTRATE JUDGE NOLAN**

II. Basis of Jurisdiction:    **4. Diversity (complete item III)**

III. Citizenship of Principal Parties
**(Diversity Cases Only)**
    Plaintiff:- **3 Citizen of Foreign Country**
    Defendant:- **1 Citizen of This State**

FILED-EOS
03 JUL -7 PH 4: 02
CLERK
U.S. DISTRICT COURT

IV. Origin :    **1. Original Proceeding**

V. Nature of Suit:    **190 Other Contract**

VI. Cause of Action:
**This diversity case (28 U.S.C.) arises out of a written contract, whereby the first defendant, Prime Leasing, Inc. agreed to pay a specified placement fee. The second defendant is liable as a successor and assignee.**

VII. Requested in Complaint

Class Action:

Dollar Demand: **551,050, plus interest and attorneys' fees**

Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: _Juey 7, 2003_____

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**                    **Revised: 06/28/00**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

In the Matter of

WAFRA CAPITAL PARTNERS, L.P
                PLAINTIFF,
PRIME LEASING, INC.
                DEFENDANTS.

**DOCKETED**

JUL 0 8 2003

Case Number: JUDGE MORAN

# 03C 4687

MAGISTRATE JUDGE NOLAN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

WAFRA CAPITAL, PARTNERS, L.P

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE | | SIGNATURE | |
| NAME Oleg Rivkin | | NAME Leon Zelechowski | |
| FIRM Fox Horan & Camerini, LLP | | FIRM Leon Zelechowski, Ltd. | |
| STREET ADDRESS 825 Third Avenue | | STREET ADDRESS 111 W. Washington, Suite 1436 | |
| CITY/STATE/ZIP New York, New York 10022 | | CITY/STATE/ZIP Chicago, Illinois 60602 | |
| TELEPHONE NUMBER 212-480-4800 | FAX NUMBER | TELEPHONE NUMBER 312-609-0022 | FAX NUMBER 312-609-0022 |
| E-MAIL ADDRESS | | E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) ARDC No. 03106039 | |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | | MEMBER OF TRIAL BAR? YES ☑ NO ☐ | |
| TRIAL ATTORNEY? YES ☑ NO ☐ | | TRIAL ATTORNEY? YES ☐ NO ☑ | |
| | | DESIGNATED AS LOCAL COUNSEL? YES ☑ NO ☐ | |
| (C) | | (D) | |
| SIGNATURE | | SIGNATURE | |
| NAME Eric Lindquist | | NAME | |
| FIRM Fox Horan & Camerini, LLP | | FIRM | |
| STREET ADDRESS 825 Third Avenue | | STREET ADDRESS | |
| CITY/STATE/ZIP New York, New York 10022 | | CITY/STATE/ZIP | |
| TELEPHONE NUMBER 212-480-4800 | FAX NUMBER | TELEPHONE NUMBER | FAX NUMBER |
| E-MAIL ADDRESS | | E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | | MEMBER OF TRIAL BAR? YES ☐ NO ☐ | |
| TRIAL ATTORNEY? YES ☑ NO ☐ | | TRIAL ATTORNEY? YES ☐ NO ☐ | |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | |

FILED-EDS JUL -7 PH 4:02 CLERK U.S. DISTRICT COURT

1-3