# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4687 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Wafra vs. Prime Leasing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Plaintiff's motion for a turnover is denied. Defendants' motion to strike is denied as moot.

*Amy J. St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

TH✓   courtroom deputy's initials

number of notices

date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

**Document Number**

30

U.S. DISTRICT COURT
CLERK
04 JAN 27 PM 3:12

Date/time received in central Clerk's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WAFRA CAPITAL PARTNERS, L.P.,    )
                              )
              Plaintiff,    )
                              )
       v.           )
                              )
PRIME LEASING, INC. and    )    No. 03 C 4687
WILLIAM A. BRANDT, JR., as Assignee,    )
                              )
              Defendants.    )

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Wafra Capital Partners, L.P., ("Wafra") sued Prime Leasing, Inc. ("Prime") and

William Brandt, Jr., as Assignee for Prime, for breach of contract. On August 26, 2003 the Court

entered a judgment in favor of Wafra in the amount of $732,083. On October 1, 2003, Plaintiff

filed a motion for an order directing Brandt, the Assignee, to turn over $732,509.88 from the

funds held by Brandt in his capacity as Assignee for the benefit of creditors of Prime. (R.13-1,

Ex. D.) For the reasons set forth below, Plaintiff's motion is denied.

### BACKGROUND

On March 1, 1999, Plaintiff and Prime entered into a contract in which Prime agreed to

pay certain sums to Plaintiff. Prime failed to make such payments.

On July 14, 2000, Prime and Brandt executed a Trust Agreement and Assignment for the

Benefit of Creditors of Prime Leasing, Inc. (the "Assignment Agreement") in which Brandt was

appointed to carry out the Agreement. (R. 13-1, Ex. D.) Prime noted that it was indebted to

various entities. It transferred to Brandt "for the benefit of its creditors" the title to all of its

remaining property and assets "so that the property so transferred may be expeditiously liquidated and the proceeds thereof be fairly distributed to its creditors without any preference or priority, except such priority as is established and permitted by applicable law."

On July 8, 2003, Wafra filed this lawsuit against Prime and Brandt, as Assignee for Prime, alleging breach of the March 1, 1999 contract. On August 6, 2003, Prime made an offer of judgment in the amount of $732,083. (R. 3-1.) Plaintiff accepted that offer on August 8, 2003. (R. 5-1.) On August 26, 2003, the Court entered a judgment against Prime in the amount of $732,083. (R. 8-1.) On October 7, 2003, Plaintiff voluntarily dismissed its case against Brandt.

On December 11, 2003, the Court granted Brandt's motion to reassign this case as a related case to *Wafra v. Prime Capital Corp.*, 01 C 4314 ("*Wafra I*"), pursuant to Local Rule 40.4. *Wafra I* is a securities fraud case pending before this Court. For a description of the allegations in *Wafra I*, see *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002).

## ANALYSIS

In Illinois, an assignment for the benefit of creditors is "a voluntary transfer by a debtor of his property to an assignee in trust for the purpose of applying the property or proceeds thereof to the payment of his debts." *Consol. Pipe & Supply Co. v. Rovanco Corp.*, 897 F. Supp. 364, 370 (N.D. Ill. 1995). A legal "assignment for the benefit of creditors passes legal and equitable title to the assignor-debtor's property absolutely from the assignor-debtor to the assignee." *Id.*, citing *Fed. Deposit Ins. Corp. v. Juron*, 713 F. Supp. 1116, 1119-20 (N.D. Ill. 1989).

An assignment is invalid and unenforceable against nonparticipating creditors if it

2

contains conditions "onerous" to creditors. *Consol. Pipe*, 897 F. Supp. at 370. "One condition

which will render an assignment invalid is when it puts creditors to a choice of taking a fraction

of their claims in settlement of the whole . . . . Thus assignments purportedly for the benefit of

creditors, which place such creditors upon the choice of taking nothing at all or a fraction of their

claims in settlement of the whole, are invalid as to non-consenting creditors." *Id.* (citations

omitted).

Wafra seeks a turnover of $732,083 in Brandt's possession. Wafra argues that it is not

governed by the Assignment Agreement and therefore a turnover is appropriate. Wafra

specifically argues that the Assignment Agreement is unenforceable because it gives the

Assignee the power to compromise claims and to prefer specific creditors, and it absolves the

Assignee from all liability of his conduct. Wafra further argues that the Assignee is improperly

attempting to coerce Plaintiff and its affiliate into releasing their claims against Prime in

exchange for payment of a small fraction of Prime's obligations to them.

## I.     The Assignment Agreement Does Not Provide For A Full Release By Wafra Of Its Claims Against Prime As A Condition Precedent To Receiving Payment

Wafra first argues that the Assignment Agreement provides for *pro rata* distribution to

"other creditors," and that the "facts and circumstances" of this case establish that a full release

by each creditor "was intended to be one of the requirements." In its motion, Wafra contends

that the Assignee's prior settlement agreements, including its settlement with James Friedman – a

former officer, director and shareholder of Prime – included a full release, and thus prove that the

Assignee is requiring Prime to release of its claims in exchange for a *pro rata* settlement.

First, the plain language of the Assignment Agreement contradicts Plaintiff's position.

Paragraph 3(g)(6) of the Assignment Agreement provides for the *pro rata* distribution of assets to other creditors: "all distributions to other creditors shall be, within each class, *pro rata* in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full." Nothing in the Assignment Agreement, however, requires a creditor to provide a release of claims in exchange for the right to receive such a distribution.

Plaintiff next argues that Brandt's settlement with James Friedman, a former officer and director of Prime, for a fraction of his claim and Friedman's execution of a general release from liability supports its argument that Brandt is forcing such a release in this case. Friedman is an unliquidated creditor and thus situated differently than Plaintiff. Brandt's individual settlement with Friedman and the circumstances surrounding it are not conclusive with respect to Plaintiff's position. The Court is not persuaded by this argument.

Furthermore, Plaintiff attempts to support its argument by a statement made by Brandt's attorney David Missner during an October 22, 2003 conference call. That call involved an attempt to settle *Wafra I* and other claims. The initial conversation included Plaintiff's attorneys and attorneys for the Trustee for the Pools, the largest claimant against Prime's assets. At some point during the conference call, Missner joined the participants. Plaintiff argues that Missner told the other participants that if they consented to a certain settlement proposal, Brandt "will need releases from Wafra as a condition of the Assignee's approval of any payment to Wafra Capital and Wafra Leasing." (R. 13-1, Ex A ¶5.) Plaintiff contends that these statements prove that Brandt is requiring a release in exchange for a *pro rata* payment of Plaintiff's claims. It is clear, however, that these statements were made during settlement negotiations and are not appropriate to use against Brandt here. Fed. R. Evid. 408. Rule 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. "Under Rule 408, the Court has broad discretion when deciding whether to admit evidence of settlement that is offered for 'another purpose'." *Objectwave Corp. v. Authentix Network, Inc.*, No. 00 C 7823, 2001 WL 204768, at *2 (N.D. Ill. Mar. 1, 2001). The Court declines to admit it here.

Even if the Court considered Missner's statements, such statements do not support Plaintiff's position. According to Missner, when he joined a conference call between Wafra and another securitization holder – the Pools – an attorney for the Trustee of the Pools informed him that the Pools and Wafra had had settlement negotiations and that he had proposed a settlement in which the parties would agree that the assets held by the Assignee would be divided among the claimants according to specific proposed terms. Missner responded "that if the parties (Wafra and the Pools) each agreed to an overall agreement, the Assignee would probably go along with a settlement provided that each party to the settlement each execute a general release in favor of the Assignee so as to avoid any further litigation between the parties and also enable the Assignee to close the Estate." Missner further has affirmed that he did not "at that time, or any other time, demand that Wafra must execute a release in return for being allowed a claim against the Estate in the amount of $732,083."

This Court is familiar with Brandt's attempts to settle this case given the settlement negotiations conducted by the Court in *Wafra I*. The representations by Missner in his January 15, 2004 affidavit are consistent with facts previously represented to this Court. Missner's statements do not support Plaintiff's argument that the Assignee was forcing them to execute a general release as a condition precedent to receiving a *pro rata* distribution of the judgment in this case.

## II.    The Assignment Agreement Does Not Allow The Assignee To Compromise Claims And Prefer Customers

Next, Wafra argues that the Assignment Agreement is defective because it gives the Assignee the power to compromise the claims of creditors and to give preference to creditors. Paragraph 3(f) of the Assignment Agreement provides that the Assignee has the power "to settle any and all claims against or in favor of [Prime] with full power to compromise . . . ." The power of an assignee to compromise claims alone does not invalidate an assignment. *See Reynolds v. Burns*, 20 Ill. 2d 179, 190, 170 N.E.2d 122 (1960). *See also Consol. Pipe*, 897 F. Supp. at 370 (assignment invalid where it "gives the assignee the power **both** to compromise creditors' claims and to prefer creditors") (emphasis added); *Tribune Co. v. R&J Furniture*, 20 Ill. App. 2d 370, 155 N.E.2d 844 (Ill. App. Ct. 1959) (same). Contrary to Wafra's suggestion, however, the power to compromise is not joined with the power to prefer one creditor over another. To the contrary, the Assignment Agreement mandates that the Assignee pay claims pursuant to the priorities identified in section 3 of the Agreement unless "applicable law requires payment of certain claims or class of claims in priority over and prior to payment of other claims in priority other than as set forth above." Wafra's argument that paragraph 3(g)(6) allows for the *pro rata*

distribution is not supported by the plain language of the Assignment Agreement.

## III.    The Assignee Must Act in Good Faith

Wafra next challenges the validity of the Assignment Agreement based on the liability of the Assignee. Wafra contends that the Assignment Agreement relieves the Assignee from any responsibility for his wrongful acts, and is thus void.

Paragraph 7 of the Assignment Agreement provides, in relevant part: "It is understood and agreed that the Trustee-Assignee is to assume no personal liability or responsibility for any of his acts as Trustee-Assignee herein, but his obligation shall be limited to the performance of the terms and conditions of the Trust Agreement, in good faith and in the exercise of his best judgment." This provision clearly provides that the Assignee must act in good faith and exercise his best judgment. Thus the Assignee is absolved from liability only if he performs his duties in good faith and in the exercise of his best judgment. This provision does not render the assignment invalid.

## CONCLUSION

Plaintiff's motion for a turnover is denied. Defendants' motion to strike is denied as moot.

Dated:   January 27, 2004

AMY J. ST?EVE
United States District Court Judge

7